UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WINBURN,

       Plaintiff,

v.                                                                Case No. 1:04-cv-562
                                                                  HON. R. ALLAN EDGAR
UNKNOWN HALLOWELL,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Winburn, a/k/a Scott Libby, an inmate currently confined at the Kinross Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Kathleen Hallowell, Resident Unit Officer at the Muskegon Correctional Facility, in Muskegon, Michigan.  Plaintiff's complaint alleges that he was convicted of first degree felony murder and assault with intent to commit murder after a jury trial on January 9, 1992.  Plaintiff appealed his conviction and was successful in having the conviction vacated and reduced to second degree murder.  Plaintiff has maintained his innocence.  In 2001, plaintiff claims to have received a legal sized envelope from an unidentified member of the Wayne County Prosecutor's Office which stated "Dear Mr. Libby: Enclosed for your review is an example of the underhanded tactics the Detroit Police and certain representatives of our Office engage in all too often.  Perhaps you can bring this to the attention of the right people when you are vindicated."  Plaintiff claims that the information included two internal memorandums prepared by prosecutors that discussed the impropriety of using professional jailhouse snitches.  Plaintiff claims that a transcript of a "clandestine hearing" was included which revealed the use of professional jailhouse snitches who

were granted reduced sentences.  Plaintiff claims that Judge Shamo indicated in the transcript that he did not want the transcript released to anyone.  Plaintiff has attached a copy of the transcript which was actually a court proceeding of a specific instance where a new sentence was granted to an inmate who had cooperated with police officers.

Plaintiff claims that after his family hired a private investigator, it was revealed between 2001 and 2003 that there was a direct link between the shooting on November 8, 1990, which plaintiff's conviction arises from, and a major cocaine bust which occurred on the same day which  involved former members of the Medellin Drug Cartel of Colombia.  The investigation showed that co-conspirator Ceasar Vallejo ordered the shooting.  Plaintiff claims that these "facts" were not known at the time of his trial.

Plaintiff asserts that he had new evidence of his innocence in the form of an affidavit from Timothy W. Taylor, who admitted to the shooting and killing of the individual that plaintiff was convicted of murdering.  Taylor was sent by Vallejo to shoot and kill the victim.  Plaintiff alleges that it was discovered that Taylor left a Pepsi bottle at the crime scene and that Detroit Police lifted two fingerprints off the bottle.

Based upon this information, plaintiff prepared a motion for relief from judgment and filed it on June 12, 2003.  Plaintiff began preparing an amended/supplemental motion for relief from judgment.  Plaintiff received a second legal sized envelope on September 1, 2003, purportedly from the Wayne County Prosecutor's Office.  Plaintiff claims that "startling information was disclosed," showing "crucial evidence" had been withheld.  Plaintiff claims that he obtained documents from the "Miscellaneous File," which is a file prepared in every Detroit Police homicide investigation that contains information which is never disclosed about the investigation.  Included in the file was an evidence list which contained one yellow piece of paper found in the victim's pocket with the name

Ceasar Vallejo and a telephone number and a witness statement from suspect John Green who indicated Vallejo and Taylor knew each other and that he helped Taylor move the body of the deceased from a back hallway to the love seat in the living room. There was also a summary report of a confidential informant's statement regarding the shooting indicating that the Colombians were involved. Reports and memorandums showing that plaintiff was under surveillance by various law enforcement agencies starting in early 1990 were also listed. A surveillance photograph of Ceasar Vallejo, Timothy Taylor and Thomas/John Green, named by an FBI Special Agent, was contained in the mailing. Also included were FBI and DEA memos indicating that Edgar and Ceasar Vallejo flooded Detroit with hundreds of pounds of cocaine per month and started a drug war. The memos indicated that Edgar and Ceasar were active CIA operatives and should be afforded amnesty because they were needed for intelligence despite their involvement in drugs, murders and plots to murder government officials. A United States Customs memorandum indicated that Vallejo was deliberately lost during surveillance in Ohio to facilitate CIA amnesty.

Plaintiff included all this information in his motion for relief from judgment that he was preparing to file. However, on September 15, 2003, plaintiff was stopped with his paperwork by defendant Hallowell. Defendant Hallowell asked plaintiff what he had in his hands and plaintiff responded that it was his legal work showing his innocence and it was really none of her concern. Defendant Hallowell allegedly indicated that it was contraband and confiscated plaintiff's property. Plaintiff was not given a contraband removal slip. Prisoner Jose Prado saw the information that plaintiff had obtained and had knowledge of plaintiff's motion. Prisoner Prado also allegedly witnessed defendant Hallowell take plaintiff's property. Plaintiff received a minor misconduct ticket for possession of contraband suggesting that it was a fire hazard. Plaintiff states that the minor misconduct disappeared along with all of his papers. On September 16, 2003, plaintiff was informed

that he would have to pack up and move because defendant Hallowell no longer wanted him in Unit One.

Plaintiff claims that another prisoner overheard defendant Hallowell state that she had to find the misconduct ticket she wrote on plaintiff or write him a new one because plaintiff had filed a Step II grievance on the issue. Plaintiff alleges that his cousin Shelly Kohari was denied a visitor's application because she was allegedly a drug dealer and plaintiff was allegedly involved in organized crime. The denial came from Inspector C. Clay. Plaintiff claims that the assertions are false, and the only way Inspector Clay could make such allegations is if he saw the information that defendant Hallowell had confiscated. Plaintiff alleges that Inspector Clay informed him that he denied the visitation because plaintiff had filed grievances.

On November 14, 2003, plaintiff's motion for relief from judgment was denied in the trial court because it was found that Mr. Taylor's confession was inherently incredible. Plaintiff claims without the supplemental information available to corroborate Taylor's confession he could not succeed on his motion. Plaintiff claims that he would have prevailed on his motion if the trial court had the confiscated information available for review. Plaintiff alleges that he believes that Ceasar Vallejo has been arrested a second time with more than 23 million dollars worth of cocaine. Since plaintiff has brought forward this information, he claims that he has been stabbed in the back, threatened and informed that a $50,000.00 contract has been placed on his life. Plaintiff claims that he is currently confined in protective custody. Plaintiff alleges that defendant Hallowell denied him access to the courts. Plaintiff demands a trial by jury and $100,000,000.00.

Presently before the Court is defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material

fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant first argues that she did not confiscate any papers from plaintiff on September 15, 2003.  Defendant asserts that her only involvement with plaintiff was earlier that day when she issued him a minor misconduct ticket for failing to appear for an assigned callout.  Defendant argues that there exists no evidence to support plaintiff's claim that she confiscated plaintiff's documents.  Defendant has presented a very good argument for trial purposes, but not a very strong argument for summary judgment purposes.  Plaintiff has  refuted defendant's argument

by presenting an affidavit from prisoner Ron Gerrior who attests that he witnessed defendant Hallowell confiscate plaintiff's documents on September 15, 2003. The court cannot make credibility determinations in deciding a motion for summary judgment. Accordingly, it is recommended that the court find a question of material fact exists on this issue. Defendant has also asserted the defense of qualified immunity, arguing that she was not involved in confiscating any of plaintiff's documents.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An

official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding."  *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Thus, where the underlying claim is one in which a certain motive or intent is an element, and plaintiff has made allegations which, if proven, will

establish the existence of the necessary state-of-mind, a factual issue exists, preventing dismissal

pursuant to Rules 12(b)(6) or 56.  *See Sanchez v. Sanchez*, 777 F. Supp. 906 (D.N.M. 1991).  In the

Sixth Circuit, plaintiff need not include such allegations in his complaint, since in preparing his

Complaint, he has no duty to anticipate affirmative defenses. *Dominique v. Telb*, 831 F.2d 673, 676

(1987).  However, once the affirmative defense is raised, plaintiff must come forward with such

additional facts as would establish the requisite state of mind).  *Id.*

> Accordingly, when a plaintiff pleads his claim in generalized "notice"
> form, and the defense of qualified immunity is asserted through a
> motion to dismiss, the plaintiff is required to respond to that defense.
> If his original complaint is deficient in that regard, he must amend his
> complaint to include the specific, non-conclusory allegations of fact
> that will enable the district court to determine that those facts, if
> proved, will overcome the defense of qualified immunity.   For
> example, if the original complaint alleged that a police officer "used
> excessive force," and qualified immunity is asserted, then plaintiff
> would be required to amend with allegations of evidence sufficient to
> demonstrate that the force used against him was, indeed,
> unreasonable.  It is in this sense that a heightened standard attaches
> to plaintiff's pleading.

*Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995).

In the opinion of the undersigned, when the issue is raised prior to the completion of

discovery, the plaintiff must simply respond with specific allegations of fact adequate to survive

scrutiny under Rule 12(b)(6) standards.  However, when the issue of motive is raised in the context

of a motion for summary judgment following an adequate period of discovery, the amount of proof

required is that quantum of evidence necessary to allow a jury to return a verdict in plaintiff's favor.

*Crutcher v. Commonwealth of Kentucky*, 883 F.2d 502, 504 (6th Cir. 1989); *Hull v. Cuyahoga Valley

Joint Vocational School District Bd. of Education*, 926 F.2d 505 (6th Cir.), *cert. denied sub nom.*,

*Hull v. Shuck*, 501 U.S. 1261 (1991).  *Cf. Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir. 1988), *cert.

denied*, 488 U.S. 1007 (1989) (to avert dismissal short of trial, plaintiff must come forward with

something more than inferential or circumstantial support for his allegation of unconstitutional motive). A plaintiff will defeat a defense of qualified immunity if he can present sufficient evidence to prove the existence of a genuine issue of material fact regarding the issue of immunity or if the undisputed facts which show that defendant violated plaintiff's clearly established rights. *Noble*, 87 F.3d at 161.

When ruling on qualified immunity, this court must expressly identify the right at issue and summarize the factual or evidentiary basis for its conclusion. *Noble*, 87 F.3d at 161; *Wegener*, 933 F.2d at 392. In determining whether a clearly established right exists, the district court looks first to the binding precedent of the Supreme Court, then to that of the Sixth Circuit, and then finally to decisions of other jurisdictions. *Wegener*, 933 F.2d at 392; *Masters v. Crouch*, 872 F.2d 1248, 1251-52 (6th Cir.), *cert. denied sub nom, Frey v. Masters*, 493 U.S. 977 (1989); *Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989); *Ohio Civil Service Employees Assn. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). Public officials are expected to be aware of clearly established law specifically governing their conduct. *Long v. Norris*, 929 F.2d 1111, 1115 (6th Cir.), *cert. denied sub nom, Jones v. Long*, 502 U.S. 863 (1991).

In the opinion of the undersigned, plaintiff has presented sufficient evidence which could show that defendant Hallowell confiscated documents that were necessary evidence for plaintiff's pending motion for relief from judgment. The issued ignored by defendant in this motion is whether, in fact, the alleged confiscation of the documents could support an access to the courts violation. This is the primary issue in this case, which has not been addressed by defendant. While there exists some evidence in this case which indicates that plaintiff's attorney may have possessed this evidence and previously presented it to the trial court and the Michigan Court of Appeals, the issue has not been addressed. See affidavit of Sarah Hunter attached as Exhibit D to plaintiff's

response, docket #42.  Defendant's silence regarding this potential argument presents significant doubt as to whether such an argument may be successful.

Accordingly, it is recommended that defendant's Motion for Summary Judgment (docket #36) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated:  February 8, 2006