UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WINBURN,

    Plaintiff,

v.                                         Case No. 1:04-cv-562
                                         HON. R. ALLAN EDGAR

UNKNOWN HALLOWELL,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Winburn, a/k/a Scott Libby, an inmate currently confined at the Kinross Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Kathleen Hallowell, Resident Unit Officer at the Muskegon Correctional Facility, in Muskegon, Michigan. Trial is scheduled for October 10, 2006. Defendant has filed a motion to dismiss.

Plaintiff's complaint alleges that he was convicted of first degree felony murder and assault with intent to commit murder after a jury trial on January 9, 1992. Plaintiff appealed his conviction and was successful in having the conviction vacated and reduced to second degree murder. Plaintiff has maintained his innocence. In 2001, plaintiff claims to have received a legal sized envelope from an unidentified member of the Wayne County Prosecutor's Office which stated "Dear Mr. Libby: Enclosed for your review is an example of the underhanded tactics the Detroit Police and certain representatives of our Office engage in all too often. Perhaps you can bring this to the attention of the right people when you are vindicated." Plaintiff claims that the information included two internal memorandums prepared by prosecutors that discussed the impropriety of using

professional jailhouse snitches. Plaintiff claims that a transcript of a "clandestine hearing" was included which revealed the use of professional jailhouse snitches who were granted reduced sentences. Plaintiff claims that Judge Shamo indicated in the transcript that he did not want the transcript released to anyone. Plaintiff has attached a copy of the transcript which was actually a court proceeding of a specific instance where a new sentence was granted to an inmate who had cooperated with police officers.

Plaintiff claims that after his family hired a private investigator, it was revealed between 2001 and 2003 that there was a direct link between the shooting on November 8, 1990, which plaintiff's conviction arises from, and a major cocaine bust which occurred on the same day which involved former members of the Medellin Drug Cartel of Colombia. The investigation showed that co-conspirator Ceasar Vallejo ordered the shooting. Plaintiff claims that these "facts" were not known at the time of his trial.

Plaintiff asserts that he had new evidence of his innocence in the form of an affidavit from Timothy W. Taylor, who admitted to the shooting and killing of the individual that plaintiff was convicted of murdering. Taylor was sent by Vallejo to shoot and kill the victim. Plaintiff alleges that it was discovered that Taylor left a Pepsi bottle at the crime scene and that Detroit Police lifted two fingerprints off the bottle.

Based upon this information, plaintiff prepared a motion for relief from judgment and filed it on June 12, 2003. Plaintiff began preparing an amended/supplemental motion for relief from judgment. Plaintiff received a second legal sized envelope on September 1, 2003, purportedly from the Wayne County Prosecutor's Office. Plaintiff claims that "startling information was disclosed," showing "crucial evidence" had been withheld. Plaintiff claims that he obtained documents from the "Miscellaneous File," which is a file prepared in every Detroit Police homicide investigation that

contains information which is never disclosed about the investigation. Included in the file was an evidence list which contained one yellow piece of paper found in the victim's pocket with the name Ceasar Vallejo and a telephone number and a witness statement from suspect John Green who indicated Vallejo and Taylor knew each other and that he helped Taylor move the body of the deceased from a back hallway to the love seat in the living room. There was also a summary report of a confidential informant's statement regarding the shooting indicating that the Colombians were involved. Reports and memorandums showing that plaintiff was under surveillance by various law enforcement agencies starting in early 1990 were also listed. A surveillance photograph of Ceasar Vallejo, Timothy Taylor and Thomas/John Green, named by an FBI Special Agent, was contained in the mailing. Also included were FBI and DEA memos indicating that Edgar and Ceasar Vallejo flooded Detroit with hundreds of pounds of cocaine per month and started a drug war. The memos indicated that Edgar and Ceasar were active CIA operatives and should be afforded amnesty because they were needed for intelligence despite their involvement in drugs, murders and plots to murder government officials. A United States Customs memorandum indicated that Vallejo was deliberately lost during surveillance in Ohio to facilitate CIA amnesty.

Plaintiff included all this information in his motion for relief from judgment that he was preparing to file. However, on September 15, 2003, plaintiff was stopped with his paperwork by defendant Hallowell. Defendant Hallowell asked plaintiff what he had in his hands and plaintiff responded that it was his legal work showing his innocence and it was really none of her concern. Defendant Hallowell allegedly indicated that it was contraband and confiscated plaintiff's property. Plaintiff was not given a contraband removal slip. Prisoner Jose Prado saw the information that plaintiff had obtained and had knowledge of plaintiff's motion. Prisoner Prado also allegedly witnessed defendant Hallowell take plaintiff's property. Plaintiff received a minor misconduct ticket

for possession of contraband suggesting that it was a fire hazard. Plaintiff states that the minor misconduct disappeared along with all of his papers. On September 16, 2003, plaintiff was informed that he would have to pack up and move because defendant Hallowell no longer wanted him in Unit One.

Plaintiff claims that another prisoner overheard defendant Hallowell state that she had to find the misconduct ticket she wrote on plaintiff or write him a new one because plaintiff had filed a Step II grievance on the issue. Plaintiff alleges that his cousin Shelly Kohari was denied a visitor's application because she was allegedly a drug dealer and plaintiff was allegedly involved in organized crime. The denial came from Inspector C. Clay. Plaintiff claims that the assertions are false, and the only way Inspector Clay could make such allegations is if he saw the information that defendant Hallowell had confiscated. Plaintiff alleges that Inspector Clay informed him that he denied the visitation because plaintiff had filed grievances.

On November 14, 2003, plaintiff's motion for relief from judgment was denied in the trial court because it was found that Mr. Taylor's confession was inherently incredible. Plaintiff claims without the supplemental information available to corroborate Taylor's confession he could not succeed on his motion. Plaintiff claims that he would have prevailed on his motion if the trial court had the confiscated information available for review. Plaintiff alleges that he believes that Ceasar Vallejo has been arrested a second time with more than 23 million dollars worth of cocaine. Since plaintiff has brought forward this information, he claims that he has been stabbed in the back, threatened and informed that a $50,000.00 contract has been placed on his life. Plaintiff claims that he is currently confined in protective custody. Plaintiff alleges that defendant Hallowell denied him access to the courts. Plaintiff demands a trial by jury and $100,000,000.00.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355. U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 988 F.2d at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Defendant argues that plaintiff's access to the courts claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck* the plaintiff alleged that police and prosecutors engaged in an arbitrary investigation and knowingly destroyed exculpatory evidence which could have proved his innocence. Plaintiff's complaint asked for compensatory and punitive damages. Plaintiff did not ask for injunctive relief or a release from custody. The court analogized the claims to malicious

- 5 -

prosecution claims which required favorable termination of criminal proceedings to succeed. The court held that in order to obtain damages for an alleged unconstitutional conviction or imprisonment or for harm caused by actions which would render a conviction or sentence invalid, a section 1983 plaintiff must first prove that his conviction was reversed or rendered invalid.

The Supreme Court more recently decided *Wilkinson v. Dotson*, 544 U.S. 74 (2005), reversing the Sixth Circuit, holding that prisoners could challenge state parole procedures in a section 1983 action and were not required to first seek relief in a habeas action. The Court concluded that a challenge to parole procedures was not a request for immediate release or speedier release from prison. Nor did the challenge necessarily imply the invalidity of the plaintiffs' convictions.

Here, plaintiff is not challenging his conviction, but asserting that his attempt to bring a motion for relief from judgment was effectively prejudiced by defendant's confiscation of legal materials that plaintiff cannot replicate. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Moreover, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

However, to state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993). Plaintiff has alleged that he received an actual injury when defendant confiscated his brief and supporting documents. Plaintiff alleges that he cannot obtain duplicate copies of supporting documents.

Defendant has argued that plaintiff cannot state a claim merely for the cost of the alleged confiscated documents, citing the Seventh Circuit case of *Nance v. Vieregge*, 147 F.3d 489 (7th Cir. 1998). In *Nance*, the plaintiff sued the defendant for loss of photocopies of cases that the inmate wanted to reference during argument for leave to withdraw a guilty plea. However, Nance sued only for replacement costs of duplicate copies of the cases his arguments relied upon. Clearly, *Nance* did not present an access to the courts violation, because the lost documents, photocopies of case decisions, were simply replaceable and widely available.

In this case, plaintiff is alleging that he was deprived of the right to support his motion for relief from judgment, because defendant confiscated his brief and supporting documentation and

never returned the documents. An access to the courts claim is stated where the inmate alleged that an affidavit supporting his habeas petition was confiscated and never returned. *Lueck v. Wathen*, 262 F.Supp. 2d 690 (N.D. Tex. 2003), factually distinguishing the *Nance* decision. In the opinion of the undersigned, defendant is not entitled to dismissal of this action.

Defendant has sought an enlargement of time for discovery, to file motions and for a narrative statement. This matter is set for trial on October 6, 2006. Defendant's motion should be denied. Plaintiff has filed a motion to amend his complaint to "fully crystallizing the pertinent issues raised in the original complaint" and "adding a request for injunctive relief." Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). Where discovery was closed, and the plaintiff requested to add new causes of action and new parties, without explanation for the delay in bringing the motion to amend the complaint, it was not an abuse of discretion to deny the plaintiff's motion to amend. *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992). Plaintiff accuses defendant of "sandbagging" by filing a late dispositive motion. Plaintiff in turn then filed a very late motion to amend his complaint. Plaintiff points out that two years have passed since he filed his original complaint. Nothing new has happened during that two year period. The allegations in plaintiff's amended complaint were all available to plaintiff when he filed his original complaint. It is recommended that the court deny plaintiff's motion to file an amended complaint.

Plaintiff filed a motion for a pretrial telephone conference so that he can make arguments regarding defendant's dispositive motion. It is recommended that this motion be denied as unnecessary. Plaintiff filed a motion for the court to take judicial notice that he has no other remedy available other than a section 1983 action, and a motion to take judicial notice of the law in this jurisdiction. It is recommended that plaintiff's motions be denied.

Accordingly, it is recommended that defendant's motion to dismiss (docket #65), motion to stay the proceedings (docket #85), and motion for an extension of time (docket #103) be DENIED. It is further recommended that plaintiff's motion for an order finding that defendant's *Heck* argument be waived or abandoned (docket #94), motion for the recusal of the Attorney General's Office as counsel for defendant (docket #76), motion for sanctions (docket #105), motion for leave to file a reply brief (docket #108), motion for leave to file an amended complaint (docket #81), motion for a pretrial conference (docket #87), and motions for judicial notice (docket ## 96 and 101) be DENIED.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 31, 2006